Case 1:25-cv-03038-MKD    ECF No. 18    filed 10/03/25    PageID.120    Page 1 of 17

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 03, 2025

SEAN F. McAVOY, CLERK

HONORABLE MARY K. DIMKE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CAMERON JAMES WILSON,

    Plaintiff,

v.

DAVID SCHOENBORN, in his individual capacity; and NATHAN HOVINGHOFF, in his individual capacity,

    Defendants.

Correct Case Number: 25cv3038MKD
Case No. 4:25-cv-05031-MKD

SECOND AMENDED COMPLAINT FOR DAMAGES

UNDER 42 U.S.C. § 1983

DEMAND FOR JURY TRIAL

## I. INTRODUCTION

1. This civil rights action arises from the unlawful seizure, arrest, and detention of Plaintiff Cameron James Wilson by Washington State Patrol officers on March 5, 2025. What began as

1

a purported welfare check rapidly escalated into a series of constitutional violations, including unlawful seizure without reasonable suspicion, arrest without probable cause, deliberate indifference to disability, and retaliation for the exercise of First Amendment rights.

**2.**     Defendants' conduct violated clearly established constitutional rights under the Fourth, First, and Fourteenth Amendments to the United States Constitution. This action seeks compensatory and punitive damages, as well as injunctive relief to prevent future violations of constitutional rights.

## II. JURISDICTION AND VENUE

**3.**     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction). Plaintiff brings this action under 42 U.S.C. § 1983 for violations of rights secured by the Constitution and laws of the United States.

**4.**     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within the Eastern District of Washington.

## III. PARTIES

**5.**     Plaintiff Cameron James Wilson is an individual who has a domicile in Washington. At all times relevant to this action, Plaintiff was a person with a disability within the meaning of the Americans with Disabilities Act, having undergone leg amputation and utilizing a prosthetic device.

**6.**     Defendant Trooper Schoenborn is sued in his individual capacity. At all times relevant to this action, Defendant Schoenborn was a sworn law enforcement officer employed by the Washington State Patrol, acting under color of state law within the scope of his employment.

7. Defendant Sergeant Hovinghoff is sued in his individual capacity. At all times relevant to this action, Defendant Hovinghoff was a sworn law enforcement officer and supervisor employed by the Washington State Patrol, acting under color of state law within the scope of his employment.

### IV. STATEMENT OF FACTS

8. On March 5, 2025, at approximately 3:30 PM, Plaintiff was traveling northbound on Interstate 84 in Washington State when he stopped his vehicle on the shoulder to rest and assess his route. Plaintiff was lawfully parked and engaged in no criminal activity whatsoever.

9. Defendant Schoenborn approached Plaintiff's vehicle and initiated contact under the pretext of conducting a welfare check, asking if Plaintiff was "okay" and whether he needed assistance. This initial contact was consensual in nature, as Defendant Schoenborn had no reasonable suspicion of criminal activity and no emergency circumstances justified the approach.

10. Plaintiff immediately and clearly communicated that he was "okay" and "did not need your services," thereby unambiguously indicating that no assistance was required and that he wished to terminate the encounter. Under established Fourth Amendment jurisprudence, this clear communication should have ended the consensual encounter, as Plaintiff had every right to decline further interaction with law enforcement.

11. Despite Plaintiff's unambiguous statements that he was not in distress and did not require assistance, Defendant Schoenborn persisted in the encounter, thereby transforming what began as a consensual welfare check into an unlawful investigative detention. Defendant Schoenborn commanded Plaintiff to "step back to your car," a directive that Plaintiff rightfully refused to obey given the lack of legal justification for such a command.

12. When Plaintiff questioned the legal basis for Defendant Schoenborn's command, asking what authority he had to issue such directives, Defendant Schoenborn became visibly agitated

3

and abruptly shifted his justification for the continued detention. This questioning of authority appeared to trigger Defendant Schoenborn's escalatory response, demonstrating a pattern of retaliation against citizens who assert their constitutional rights.

13. In a clear demonstration of pretextual law enforcement, Defendant Schoenborn suddenly claimed that "license plate covers are illegal in Washington State" as justification for the detention. However, Plaintiff's vehicle bore Oregon registration plates, to which Washington State law regarding license plate covers would not apply. This pretextual shift in justification demonstrates that Defendant Schoenborn either: (a) was ignorant of basic jurisdictional limitations of Washington law, or (b) knowingly made false statements to justify an unlawful detention.

14. During this escalating encounter, Plaintiff explicitly informed Defendant Schoenborn of his disability status, stating that he "had one leg" and was "an amputee" while simultaneously attempting to de-escalate the situation by saying "de-escalate" and "let's de-escalate." This clear disclosure of disability status established Defendant Schoenborn's actual knowledge of Plaintiff's physical condition and triggered obligations under the Americans with Disabilities Act to provide reasonable accommodations.

15. Rather than acknowledging Plaintiff's disability disclosure with appropriate concern or accommodation, Defendant Schoenborn responded with a dismissive "Cool," demonstrating deliberate indifference to Plaintiff's disability and the potential need for modified law enforcement tactics. This callous response evidenced a pattern of disregard for the rights and dignity of persons with disabilities.

16. As the encounter continued to escalate despite Plaintiff's attempts at de-escalation, Plaintiff attempted to exercise his clearly established First Amendment right to record the interaction. The right to film matters of public interest, particularly police encounters, is clearly established under Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir. 1995), and numerous subsequent Ninth

Circuit decisions. Plaintiff's attempt to record was a reasonable response to the escalating and increasingly unlawful nature of the encounter.

**17.** Defendant Schoenborn's response to Plaintiff's attempt to record the encounter was immediate and retaliatory. Rather than respecting Plaintiff's constitutional right to document the interaction, Defendant Schoenborn escalated his aggressive behavior, demonstrating a clear pattern of retaliation against citizens who attempt to exercise their First Amendment rights during police encounters.

**18.** During the physical altercation that ensued, Plaintiff clearly communicated his distress and the unwanted physical contact being imposed upon him, shouting "stop touching me" in an attempt to alert Defendant Schoenborn to the fact that physical force was being used. This statement was both an assertion of Plaintiff's right to be free from unreasonable seizure and a clear indication that Defendant Schoenborn had already initiated physical contact.

**19.** In a demonstrably false statement that evidences either deliberate deception or reckless disregard for truth, Defendant Schoenborn responded to Plaintiff's "stop touching me" by claiming "I haven't touched you once yet" immediately prior to placing Plaintiff under arrest. This statement was objectively false, as evidenced by Plaintiff's contemporaneous complaint about being touched, and demonstrates a pattern of false official statements designed to create a false narrative of the encounter.

**20.** Defendant Schoenborn's conduct continued to escalate, culminating in his decision to arrest Plaintiff based solely on Plaintiff's refusal to identify himself during what began as a consensual welfare check. This arrest was wholly without probable cause, as Washington law does not require identification during consensual police encounters, and no reasonable suspicion of criminal activity had been established to justify a Terry stop requiring identification.

21. The arrest was effected with complete disregard for Plaintiff's disability and his explicit requests for accommodation. As Defendant Schoenborn moved to arrest him, Plaintiff stated "you're going to lose all qualified immunity, bro" and "don't shove me dude—I've got one leg bro—be nice," clearly communicating both his legal knowledge and his physical vulnerability while explicitly requesting gentle treatment due to his disability.

22. Despite these clear requests for accommodation and warnings about his disability, Defendant Schoenborn proceeded with the arrest using standard tactics without any modification for Plaintiff's prosthetic leg or physical limitations. This deliberate indifference to known disability constitutes a violation of both the Americans with Disabilities Act and the Equal Protection Clause of the Fourteenth Amendment.

23. Subsequent to the arrest, in what appears to be an attempt to create a false official record, Defendant Schoenborn made the demonstrably false statement that "no force was used during the arrest." This statement directly contradicts the established facts that Plaintiff had shouted "stop touching me" and "don't shove me," clearly indicating that physical force was indeed employed during the arrest process. Such false official statements evidence a pattern of deception designed to cover up constitutional violations.

24. Plaintiff was placed in the rear of Defendant Schoenborn's patrol vehicle where he was read his Constitutional Rights and remained detained for approximately 53 minutes, from approximately 16:33 to 17:26, except for a brief two-minute period during which a search of his person occurred. This prolonged detention in a confined space was particularly problematic given Plaintiff's prosthetic leg and the associated discomfort and potential medical complications.

25. The prolonged detention in the patrol vehicle caused significant physical discomfort and pain to Plaintiff's prosthetic leg and residual limb. The standard patrol vehicle seating was not designed to accommodate persons with prosthetic devices, and the extended period of confinement in an

inappropriate position caused unnecessary suffering that could have been avoided with reasonable accommodation.

26. Eventually recognizing the obvious discomfort caused by the prolonged detention, Defendant Schoenborn removed Plaintiff from the patrol vehicle and allowed him to stretch, positioning him in a manner that allowed him to stretch across the back seats. However, these minimal and belated accommodations were wholly inadequate given Plaintiff's disability, the extended duration of the detention, and the fact that reasonable accommodations should have been provided from the outset.

27. Defendant Hovinghoff arrived on the scene and assumed a supervisory role during the ongoing detention. When Plaintiff requested to speak to a sergeant, Defendant Hovinghoff engaged in conversation with Plaintiff, thereby becoming fully apprised of the circumstances of the stop, Plaintiff's disability, and the questionable legal basis for the detention and arrest.

28. Despite being fully informed of the constitutional violations occurring under his supervision, Defendant Hovinghoff failed to intervene to correct the ongoing violations or to release Plaintiff from the unlawful detention. Instead, by his inaction and continued participation in the detention, Defendant Hovinghoff ratified and endorsed the unlawful conduct, thereby becoming personally liable for the constitutional violations.

29. In what appears to be an attempt to limit legal liability while Plaintiff remained unlawfully detained, Defendant Hovinghoff requested that Plaintiff sign a waiver releasing WSP from liability that may result from leaving Plaintiff's vehicle on the shoulder. This attempt to coerce a waiver of legal rights from a person under unlawful detention and duress constitutes an additional constitutional violation and evidence of consciousness of wrongdoing.

30. Defendant Schoenborn completed a Jail Intake Authorization Form authorizing the Klickitat County Jail to book and hold Plaintiff, listing the criminal charge as RCW 46.61.021(3), "failure to identify." However, this statute specifically requires that a person be under investigation for a

crime before identification can be compelled, which was not the case here, as the encounter began as a welfare check and no traffic violation was ever observed or alleged.

31. The misapplication of RCW 46.61.021(3) demonstrates either: (a) fundamental ignorance of Washington State law by Defendant Schoenborn, or (b) knowing misapplication of the statute to provide false legal justification for an unlawful arrest. Either scenario evidences conduct that no reasonable officer could believe was lawful.

32. During the process, Plaintiff ultimately provided identification as "Cameron J Wilson" along with his date of birth, thereby eliminating any conceivable justification for the continued detention and completely undermining the stated basis for the arrest. The fact that identification was ultimately provided demonstrates that no legitimate law enforcement purpose was served by the arrest and detention.

33. The booking process subjected Plaintiff to additional humiliation and constitutional violations, including invasive questioning and procedures that were wholly unnecessary given the lack of probable cause for any criminal charges. The entire booking process was conducted despite the obvious lack of legal justification for the arrest.

34. Plaintiff was ultimately released without any criminal charges being prosecuted in the interest of justice, constituting a tacit admission by the prosecutors office that no probable cause for an arrest ever existed. The failure to prosecute charges after subjecting Plaintiff to arrest, detention, and booking demonstrates that the entire encounter was an exercise in unlawful government power designed to punish Plaintiff for asserting his constitutional rights.

35. The entire encounter, from initial contact to release, was characterized by escalating constitutional violations, deliberate indifference to disability, false official statements, retaliatory conduct, and a fundamental misunderstanding or misapplication of applicable law. The pattern of conduct demonstrates that Defendants acted with deliberate indifference to Plaintiff's constitutional rights.

36. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered significant physical injuries, including pain and discomfort to his prosthetic leg and residual limb, swelling and irritation from prolonged improper positioning, and exacerbation of existing medical conditions related to his amputation.

37. Plaintiff further suffered severe emotional distress, including humiliation from the public nature of the arrest, anxiety and trauma from the unlawful detention, fear and distress from being subjected to physical force despite his disability, and ongoing psychological effects including hypervigilance and anxiety when encountering law enforcement.

38. The constitutional violations also resulted in dignitary harm, including damage to Plaintiff's reputation in the community, loss of liberty and autonomy, violation of personal dignity and privacy, and the fundamental harm that flows from being subjected to unlawful government action in violation of the Constitution.

39. Plaintiff continues to suffer from the physical and psychological effects of this traumatic encounter, requiring ongoing medical treatment and counseling to address the injuries inflicted by Defendants' unlawful conduct. The harm caused by Defendants' actions extends far beyond the immediate detention and continues to impact Plaintiff's daily life and well-being.

## V. LEGAL CLAIMS FOR RELIEF

**COUNT I: VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS (42 U.S.C. § 1983) - UNLAWFUL SEIZURE, ARREST, AND FALSE IMPRISONMENT (Against Defendants Schoenborn and Hovinghoff)**

40. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

**41.** The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects individuals from unreasonable searches and seizures. A seizure occurs when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. United States v. Mendenhall, 446 U.S. 544, 554 (1980).

**42.** Defendant Schoenborn unlawfully seized Plaintiff without reasonable suspicion the moment he transformed what began as a consensual welfare check into an investigative detention by commanding that Plaintiff return to his vehicle and subsequently demanding identification. At this point, a reasonable person in Plaintiff's position would not have felt free to leave.

**43.** The pretextual nature of the seizure is established by Defendant Schoenborn's shifting justifications. Initially claiming to conduct a welfare check after Plaintiff clearly stated he was "okay" and "did not need your services," Defendant Schoenborn then claimed license plate covers were illegal, despite Plaintiff's vehicle bearing Oregon plates to which Washington law would not apply.

**44.** The subsequent arrest of Plaintiff was wholly without probable cause. The arrest was based solely on Plaintiff's refusal to identify himself during what began as a consensual encounter. Under Washington law, a person has no duty to identify themselves to law enforcement absent reasonable suspicion of criminal activity. State v. Rankin, 151 Wn.2d 689, 92 P.3d 202 (2004).

**45.** Defendants' conduct also constitutes false imprisonment under federal civil rights law. False imprisonment occurs when one intentionally restrains another against their will without legal justification. Here, Defendants intentionally restrained Plaintiff for approximately 53 minutes against his clearly expressed will and without any legal justification for the detention.

**46.** The misapplication of RCW 46.61.021(3) as the basis for arrest demonstrates either fundamental ignorance of Washington law or knowing misapplication of the statute. This statute requires

that a person be under investigation for a traffic infraction before identification can be compelled, which was not the case here.

**47.** Defendant Hovinghoff, as a supervising officer, ratified and endorsed the unlawful conduct by failing to intervene despite being fully aware of the circumstances and the complete lack of legal justification for the detention and arrest. His supervisory ratification makes him equally liable for the constitutional violations.

**48.** Defendants' conduct violated clearly established law and was objectively unreasonable. No reasonable officer could have believed that the seizure, arrest, and prolonged detention were lawful under these circumstances.

## COUNT II: VIOLATION OF THE FIRST AMENDMENT
## (42 U.S.C. § 1983) - RETALIATION FOR EXERCISE OF RIGHT TO RECORD
## (Against Defendants Schoenborn and Hovinghoff)

**49.** Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

**50.** The First Amendment to the United States Constitution protects the right to record police officers performing their duties in public. This right is clearly established under Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir. 1995), Fields v. City of Philadelphia, 862 F.3d 353 (3d Cir. 2017), and numerous other federal circuit decisions.

**51.** Plaintiff engaged in constitutionally protected activity by attempting to record his interaction with Defendants. This recording was a reasonable response to the escalating and increasingly unlawful nature of the encounter.

**52.** Defendants retaliated against Plaintiff for exercising his First Amendment rights by immediately escalating their aggressive behavior upon Plaintiff's attempt to record, ultimately culminating

in his unlawful arrest.

53. To establish a First Amendment retaliation claim, Plaintiff must show: (1) he engaged in constitutionally protected activity; (2) Defendants' actions would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the protected activity was a substantial or motivating factor in Defendants' conduct. All elements are satisfied here.

54. Defendants' retaliatory conduct would chill a person of ordinary firmness from continuing to engage in the protected activity of recording police encounters, thereby violating the First Amendment rights of not only Plaintiff but all citizens who might otherwise exercise this constitutional right.

55. Defendants' conduct violated clearly established law regarding the right to record police encounters, and no reasonable officer could have believed that retaliating against a citizen for recording was lawful.

## COUNT III: VIOLATION OF THE FOURTEENTH AMENDMENT (42 U.S.C. § 1983) - SUBSTANTIVE DUE PROCESS VIOLATION
**(Against Defendants Schoenborn and Hovinghoff)**

56. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

57. The Fourteenth Amendment's Due Process Clause protects individuals from government conduct that "shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). Conduct shocks the conscience when it demonstrates deliberate indifference to constitutional rights or involves the arbitrary exercise of government power.

58. Defendants' conduct shocks the conscience and violates substantive due process through multiple acts of deliberate indifference and arbitrary government action, including: (a) proceeding

with arrest and detention despite knowing Plaintiff had committed no crime; (b) making demonstrably false official statements to justify unlawful conduct; (c) deliberately ignoring Plaintiff's disability and requests for accommodation; and (d) continuing the detention for 53 minutes without any legal justification.

59. Defendant Schoenborn's dismissive "Cool" response to Plaintiff's disability disclosure, followed by his failure to provide any reasonable accommodation, demonstrates deliberate indifference that shocks the conscience. This callous disregard for a vulnerable person's well-being evidences the arbitrary exercise of government power.

60. The pattern of false official statements, including Defendant Schoenborn's claim that "no force was used" and "suspect is being combative" despite Plaintiff's contemporaneous complaints of unwanted physical contact, demonstrates a deliberate attempt to create a false narrative that shocks the conscience.

61. Defendant Hovinghoff's failure to intervene despite his supervisory authority and full knowledge of the ongoing constitutional violations constitutes deliberate indifference that shocks the conscience and violates substantive due process.

62. Defendants' conduct was not merely negligent but involved the deliberate and arbitrary exercise of government power in violation of Plaintiff's fundamental right to be free from conscience-shocking government conduct.

## COUNT IV: VIOLATION OF THE FOURTEENTH AMENDMENT
## (42 U.S.C. § 1983) - EQUAL PROTECTION AND DISABILITY DISCRIMINATION
## (Against Defendants Schoenborn and Hovinghoff)

63. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

**64.** The Fourteenth Amendment's Equal Protection Clause prohibits discrimination against individuals with disabilities and requires that persons with disabilities receive equal treatment and reasonable accommodation during police encounters. Tennessee v. Lane, 541 U.S. 509 (2004).

**65.** Plaintiff clearly disclosed his disability status to Defendants, informing them that he was an amputee with one leg and explicitly requesting gentle treatment due to his physical vulnerability. This disclosure triggered Defendants' obligation to provide reasonable accommodation under the Equal Protection Clause.

**66.** Despite clear knowledge of Plaintiff's disability, Defendants proceeded with standard arrest and detention tactics without providing any reasonable accommodation for Plaintiff's prosthetic leg or physical limitations. This deliberate indifference to known disability constitutes discrimination in violation of the Equal Protection Clause.

**67.** Defendants treated Plaintiff differently than they would have treated a non-disabled person in the same circumstances by: (a) ignoring his explicit requests for gentle treatment; (b) failing to accommodate his prosthetic leg during the 53-minute detention; (c) using standard physical tactics despite knowledge of his vulnerability; and (d) showing deliberate indifference to his disability-related needs.

**68.** The prolonged detention in the patrol vehicle without adequate accommodation for Plaintiff's prosthetic leg caused unnecessary pain and suffering that could have been avoided with reasonable accommodation, constituting disability-based discrimination.

**69.** Defendants' conduct demonstrates deliberate indifference to Plaintiff's disability and violates his rights under the Equal Protection Clause of the Fourteenth Amendment.

## COUNT V: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT TITLE II (42 U.S.C. § 12132) - DISCRIMINATION IN PUBLIC SERVICES
(Against Defendants Schoenborn and Hovinghoff)

70. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

71. Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

72. Plaintiff is a qualified individual with a disability within the meaning of the ADA, having undergone leg amputation and utilizing a prosthetic device that substantially limits his major life activities.

73. Law enforcement services, including police encounters, arrests, and detentions, constitute public services within the meaning of Title II of the ADA. Defendants were acting as agents of a public entity (Washington State Patrol) when providing these services.

74. Defendants excluded Plaintiff from the full and equal enjoyment of law enforcement services by failing to provide reasonable accommodation for his disability during the encounter, arrest, and detention.

75. Reasonable accommodations that should have been provided include: (a) modified physical tactics appropriate for a person with a prosthetic leg; (b) alternative positioning during the prolonged detention to prevent pain and injury; (c) recognition of the additional time and care needed for a person with mobility limitations; and (d) general sensitivity to the vulnerability created by his disability.

76. Defendants' failure to provide these reasonable accommodations was not based on any legitimate safety concerns or fundamental alteration of their services, but rather on deliberate indifference to Plaintiff's disability.

77. As a direct result of Defendants' ADA violations, Plaintiff suffered physical pain, emotional distress, and dignitary harm that could have been prevented with appropriate accommodation.

78. Defendants' conduct violated Title II of the ADA and entitles Plaintiff to compensatory damages, injunctive relief, and reasonable attorney fees under 42 U.S.C. § 12133 and 42 U.S.C. § 1988.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

79. Enter judgment in favor of Plaintiff and against Defendants on all counts;

80. Award Plaintiff compensatory damages in an amount to be determined at trial, but not less than $2,500,000, for the physical injuries, emotional distress, pain and suffering, humiliation, loss of liberty, and violation of constitutional and statutory rights;

81. Award Plaintiff punitive damages against Defendants in their individual capacities in an amount sufficient to punish Defendants and deter similar conduct, but not less than $1,000,000 per Defendant;

82. Award Plaintiff reasonable litigation fees and costs pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12133;

83. Grant injunctive relief requiring Defendants and the Washington State Patrol to implement comprehensive training programs regarding: (a) disability accommodation during police encoun-

ters; (b) constitutional limits on welfare checks and investigative detentions; (c) citizens' rights to record police encounters; and (d) proper application of identification statutes;

**84.** Grant such other relief as this Court deems just and proper.

### VII. DEMAND FOR JURY TRIAL

**85.** Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,

/s/ Cameron James Wilson

Pro Se Plaintiff

1312 South 44th Ave, Yakima Washington 98908

503-496-9239

cam@piitp.com