**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

CAMERON JAMES WILSON,
 Plaintiff,

   v.

DAVID SCHOENBORN and
SERGEANT NATE HOVINGHOFF,
 Defendants.

Case No. 1:25-cv-03038-MKD

**EXHIBIT A**

Deposition Excerpts of
Defendant David Schoenborn
June 16, 2026

# EXHIBIT A

## DEPOSITION EXCERPTS OF DEFENDANT TROOPER DAVID SCHOENBORN

June 16, 2026 — Via Zoom Videoconference

*Filed in Support of Plaintiff's Opposition to Defendants' Renewed Motion for Summary Judgment and Plaintiff's Cross-Motion for Partial Summary Judgment on Liability*

1

*Wilson v. Schoenborn et al., No. 1:25-cv-03038-MKD — Exhibits A & B*

**EXHIBIT A — TABLE OF EXCERPTS**

| No. | Subject | Transcript Lines |
|---|---|---|
| 1 | Does not know 42 U.S.C. § 1983 | Lines 511–514 |
| 2 | No ADA training recalled | Lines 652–670 |
| 3 | Arrest for non-existent crime is unlawful | Lines 1075–1087 |
| 4 | Does not know *Brown v. Texas* | Lines 1570–1585 |
| 5 | Person outside parked vehicle not operating | Lines 1816–1828 |
| 6 | Never observed Plaintiff driving | Lines 2035–2038 |
| 7 | No duty to identify; refusal not a crime | Lines 2104–2128 |
| 8 | Suspected "Nothing" | Lines 2563–2578 |
| 9 | *Mimms* inapplicable — no traffic stop | Lines 2680–2755 |
| 10 | Schoenborn approached Wilson; snapped fingers | Lines 2779–2785 |
| 11 | "Combative" was a slip of the tongue | Lines 2830–2842 |
| 12 | Oregon plates — should have known exempt | Lines 3624–3643 |
| 13 | Initial contact was community caretaking | Lines 4018–4021 |
| 14 | Knew Plaintiff was amputee before arrest | Lines 4060–4063 |
| 15 | Welfare check ended when Plaintiff declined | Lines 4084–4093 |
| 16 | Arrested solely for refusal to identify | Lines 4432–4441 |
| 17 | Labeled Plaintiff "sovereign citizen" | Lines 4978–4999 |
| 18 | No driving — cannot cite under RCW 10.31.100 | Lines 5476–5500 |
| 19 | Hovinghoff told him cannot cite; agreed | Lines 6018–6029 |
| 20 | Google AI — "I googled to verify" | Lines 6531–6577 |

*Wilson v. Schoenborn et al., No. 1:25-cv-03038-MKD — Exhibits A & B*

**Excerpt 1 — Does Not Know 42 U.S.C. § 1983 (Lines 511–514)**

**Q:** You are familiar with 42 U.S.C. Section 1983, correct?

**A:** No.

**Excerpt 2 — No ADA Training Recalled (Lines 652–670)**

**Q:** Did you receive any specific training on the Americans Disabilities Act?

**A:** It's been so long ago, I don't recall.

**Q:** Did you receive any specific training on how to accommodate individuals with physical disabilities during a detention or arrest?

**A:** It's been so long ago, I don't recall.

**Q:** Did you receive any specific training on interacting with amputees?

**A:** Again, it's been so long ago, I don't recall.

**Excerpt 3 — Arrest for Non-Existent Crime Is Unlawful (Lines 1075–1087)**

**Q:** So if it doesn't exist and they arrested him—

**A:** No. [It is not a lawful arrest.]

**Q:** So, if a trooper demands identification without legal authority, is the citizen required to comply?

**A:** Without legal authority?

**Q:** Correct.

**A:** So, if an officer walks up and demands identification with no legal authority, then no.

*Wilson v. Schoenborn et al., No. 1:25-cv-03038-MKD — Exhibits A & B*

**Excerpt 4 — Does Not Know *Brown v. Texas* (Lines 1570–1585)**

**Q:** So again, I want to ask, are you familiar with Brown versus Texas in any regard, muscle memory, mass-wise?

**A:** No.

**Q:** Brown v. Texas held that police cannot arrest a person for refusing to identify themselves absent reasonable suspicion of criminal activity. Were you aware of that holding before you arrested me?

**A:** What, what, you mean the, the Brown versus Texas? I'm, I'm not aware of that, no.

**Excerpt 5 — Person Outside Parked Vehicle Not Operating (Lines 1816–1828)**

**Q:** A person standing outside a parked vehicle with the engine off is not operating that vehicle, correct?

**[Slaven]:** Object to the form of the question.

**A:** The person standing outside of the vehicle with the engine off is not operating.

**Q:** Correct.

**A:** Yes.

**Excerpt 6 — Never Observed Plaintiff Driving (Lines 2035–2038)**

**Q:** But I, I, you said I, you never observed me driving the car, correct?

**A:** Correct.

**Excerpt 7 — No Duty to Identify; Refusal Not a Crime (Lines 2104–2128)**

**A:** So, if it did not apply to you.

**Q:** Huh-huh.

*Wilson v. Schoenborn et al., No. 1:25-cv-03038-MKD — Exhibits A & B*

**A:** Then yes, you would not have to.

**Q:** If I had no legal duty to identify, would my refusal to identify be a crime?

**[Slaven]:** Same objection.

**A:** So, if you didn't have to identify yourself.

**Q:** I had no legal duty to identify. My refusal to identify was not a crime, correct?

**A:** Correct.

## Excerpt 8 — Suspected "Nothing" (Lines 2563–2578)

**Q:** Mr. Wilson then asked you, what crime have you suspected me of committing, and you stated nothing, correct?

**Q:** Mr. Wilson stated to you, quote, what crime have you suspected me of committing, unquote. And you then stated nothing. Correct.

**A:** At that time, yes.

## Excerpt 9 — *Pennsylvania v. Mimms* Inapplicable (Lines 2680–2755)

**A:** That falls under the Terry stop. I think it's Pennsylvania v. M[imms].

**Q:** Right, that's reasonable suspicion of a crime, correct?

**A:** No, that's a that's a traffic stop. That's in regards to traffic stops.

**Q:** But we've just established, at this point right here, it was not a traffic stop, because you said you were checking to see if you were okay.

**Q:** And then he asked you what crime… he made it even clearer, what crime do you suspect me of committing? And you said nothing, correct? So up to this point, you had not established that you had any legal authority to send Mr. Wilson back to his car, correct?

**[Slaven]:** Object to the form of the question.

*Wilson v. Schoenborn et al., No. 1:25-cv-03038-MKD — Exhibits A & B*

**A:** There's no crime right at this point, but there's a violation, and that's where the legal authority comes in.

**Q:** I asked you, what crime did you suspect me of committing, and you said nothing. So, I did give a chance. I asked. I said, what crime do you suspect me of committing? That was your chance. And you said nothing, correct?

**A:** Correct.

### Excerpt 10 — Schoenborn Approached Wilson; Snapped Fingers (Lines 2779–2785)

**Q:** Did Mr. Wilson take steps towards you, or did you take steps towards Mr. Wilson?

**A:** Video looks like I took steps closer to Wilson.

**Q:** Um, did you snap your fingers at Mr. Wilson?

**A:** Yes.

### Excerpt 11 — "Combative" Was a Slip of the Tongue (Lines 2830–2842)

**Q:** If you had the chance to, would you use any different words in relation to you stating that Mr. Wilson was combative?

**A:** Oh, absolutely. That was a slip of the tongue. I should have said something along the lines of non-compliant, or just, uh, another unit.

**Q:** Would argumentative have fit a little bit better than combative?

**A:** Yes.

### Excerpt 12 — Oregon Plates Exempt (Lines 3624–3643)

**Q:** Alright, so in your sworn interrogatory answer of number 1, you actually cited RCW 46.16A.160(B), correct?

**A:** I'll have to look at that paper. I'm not sure.

*Wilson v. Schoenborn et al., No. 1:25-cv-03038-MKD — Exhibits A & B*

**Q:** So, you knew, at least at the time while submitting that answer, or should have known, that my Oregon plates were exempt, correct?

**[Slaven]:** Object to the form of the question.

**A:** I should have known that your plates were exempt.

### Excerpt 13 — Initial Contact Was Community Caretaking (Lines 4018–4021)

**Q:** Well, the initial stop or the initial contact was community caretaking, correct?

**A:** Initially, yes, it was community caretaking.

### Excerpt 14 — Knew Plaintiff Was Amputee Before Arrest (Lines 4060–4063)

**Q:** Did Mr. Wilson already advise you that he was an amputee at this point?

**A:** Yes.

### Excerpt 15 — Welfare Check Ended When Plaintiff Declined (Lines 4084–4093)

**Q:** When I told you I was okay and declined to engage further, the consensual encounter was over, correct?

**A:** Yes.

### Excerpt 16 — Arrested Solely for Refusal to Identify (Lines 4432–4441)

**Q:** You arrested me solely because I refused to provide identification?

**A:** At that point, yes.

**Q:** In RFA number 10, you admitted arresting me for, quote, failure to identify, quote, or, quote, failure to provide information, unquote, correct?

**A:** Okay, I'll have to look at that document, but yes.

*Wilson v. Schoenborn et al., No. 1:25-cv-03038-MKD — Exhibits A & B*

**Excerpt 17 — Labeled Plaintiff "Sovereign Citizen" (Lines 4978–4999)**

**Q:** Um, in this video, you... the very first words that you say to [Hovinghoff] is that you think Mr. Wilson's a sovereign citizen. What is your definition of a sovereign citizen?

**A:** So sovereign citizen, it's a catch-all phrase that refers to a variety of anti-government individuals. There's no real clear definition of a sovereign citizen, but basically sovereign citizens believe that they're exempt from laws.

**Excerpt 18 — No Driving; Cannot Cite Under RCW 10.31.100 (Lines 5476–5500)**

**Q [reading bodycam]:** I mean, ideally, you didn't see him drive it. No. So ideally, there's no citing him for any traffic infractions.

**Q:** So, Mr. Hovinghoff there makes a pretty clear statement on his understanding of the legal process, that you can't cite him because you actually didn't see him driving. Is that correct?

**A:** Yes.

**Q:** Then you say to him, well, there's the license plate cover, and Mr. Hovinghoff then reaffirms, well, you didn't see him move it. Correct?

**A:** Yes.

**Q:** So, then Mr. Hovinghoff reaffirms to you that you can't cite him for any traffic infractions, correct?

**A:** Yes.

**Excerpt 19 — Hovinghoff Told Him Cannot Cite; He Agreed (Lines 6018–6029)**

**Q:** Hovinghoff then explicitly stated, quote, we won't cite for any violations, because under 10.31.100, we didn't see him drive the car, unquote. Correct?

8

*Wilson v. Schoenborn et al., No. 1:25-cv-03038-MKD — Exhibits A & B*

**A:** I don't recall.

**Q:** We just watched it, my brother.

**A:** I don't remember him saying the 10.31.100.

**Excerpt 20 — Google AI / "I Googled to Verify" (Lines 6531–6577)**

**Q:** So, let's talk about how you figured out how to… what to charge me with. You told Hovinghoff, quote, so I looked at the RCW and then Googled it as well, and then Google AI gave me that one, unquote. Is that correct?

**A:** I don't recall that.

**Q:** Do you use Google AI to figure out what crime to charge people with?

**A:** No.

**Q:** So you don't use Google AI at all?

**A:** I don't recall. I use Google AI, yes.

**Q:** Did you use it on that day?

**A:** I don't recall.

**Q:** Is Google AI an authorized legal resource for the Washington State Patrol?

**A:** I don't recall.

**Q:** If you had to Google the statute after the fact, you didn't know the law at the time of the arrest, did you?

**A:** No, I googled to verify.

*Wilson v. Schoenborn et al., No. 1:25-cv-03038-MKD — Exhibits A & B*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

CAMERON JAMES WILSON,

    Plaintiff,

    v.

DAVID SCHOENBORN and
SERGEANT NATE HOVINGHOFF,

    Defendants.

Case No. 1:25-cv-03038-MKD

**EXHIBIT B**

Deposition Excerpts of
Defendant Sgt. Hovinghoff
June 15, 2026

# EXHIBIT B

## DEPOSITION EXCERPTS OF DEFENDANT SERGEANT NATE HOVINGHOFF

June 15, 2026 — Via Zoom Videoconference

*Filed in Support of Plaintiff's Opposition to Defendants' Renewed Motion for Summary Judgment and Plaintiff's Cross-Motion for Partial Summary Judgment on Liability*

*Wilson v. Schoenborn et al., No. 1:25-cv-03038-MKD — Exhibits A & B*

**EXHIBIT B — TABLE OF EXCERPTS**

| No. | Subject | Transcript Lines |
|---|---|---|
| 1 | "Sovereign citizen" label affected assessment | Lines 1702–1741 |
| 2 | Exercising rights characterized as "aggressive" | Lines 2494–2545 |
| 3 | State statute cannot override Constitution | Lines 2989–3007 |
| 4 | "Apparently I don't know" what a crime is | Lines 3118–3139 |
| 5 | Webster's dictionary; "in charge of" theory | Lines 3142–3175 |
| 6 | Told wife charge was failure to identify after Plaintiff identified | Lines 3496–3523 |
| 7 | Disability awareness — interrogatory contradiction | Lines 3526–3556 |
| 8 | No medical personnel summoned | Lines 4942–4960 |
| 9 | Phone taken; acknowledges right to record | Lines 5026–5035 |
| 10 | Conflated probable cause and reasonable suspicion | Lines 5254–5290 |
| 11 | No-cite / book anyway / "trying to reason through" | Lines 5344–5353 |
| 12 | Prosecutor said he was not going to charge it | Lines 5467–5476 |

*Wilson v. Schoenborn et al., No. 1:25-cv-03038-MKD — Exhibits A & B*

**Excerpt 1 — "Sovereign Citizen" Label Affected Assessment (Lines 1702–1741)**

**Q:** Before Schoenborn told you anything about the facts of the encounter, the first characterization he gave you was that Mr. Wilson was a sovereign citizen, correct?

**A:** I believe I answered that. Yes, I think so.

**Q:** Did Schoenborn's use of that label affect your assessment of Mr. Wilson before you even spoke with him?

**A:** It gave me some information. Uh, that I might have somebody who, um, is gonna want to do a bunch of word games. So, uh... I imagine it has some kind of effect. Not bad, not good, just, you know, it's some effect.

**Excerpt 2 — Exercising Rights Characterized as "Aggressive" (Lines 2494–2521)**

**A:** Uh, came right out of the car, back to the trooper before he could even get his radio traffic out. Would not follow any commands. He may not have raised his voice. Uh, but he definitely didn't follow any commands, and then he came all the way back to the car. So that's a little bit more aggressive than I typically see on a traffic stop or a community caretaking.

**Q:** Aggressive. So, someone just walking to be able to speak to another living being is aggressive?

**A:** It's coming out of the car quick. It's telling the officer what he is or isn't going to do and not listening to the officer. All that's fairly aggressive in my opinion.

**Q:** If someone was to invoke their rights, uh, and say, including my right to remain silent, are they obligated to speak to incriminate themselves after such invocation of rights, or reservation of rights?

**A:** No.

*Wilson v. Schoenborn et al., No. 1:25-cv-03038-MKD — Exhibits A & B*

**Excerpt 3 — State Statute Cannot Override Constitution (Lines 2989–3007)**

**Q:** So, you're stating that a state statute can override the actual supreme law of our land?

**A:** Well, I know marijuana is legal in Washington state, and it's not legal federally, but it's still used in Washington state.

**Q:** So I'm not using federal law, I'm using the Constitution here. Can a state statute override the Constitution?

**A:** Yes. Um, ideally... I would think no, but I'm surprised how many times it seems to happen.

**Excerpt 4 — "Apparently I Don't Know" What a Crime Is (Lines 3118–3139)**

**Q:** Mr. Wilson asks again, what is a crime? And you respond, quote, apparently I don't know. Do you recall saying that?

**A:** I recall that.

**Q:** Sergeant Hovinghoff, as a 20-year veteran law enforcement officer and 12-year sergeant, you told a citizen in custody that you apparently don't know the definition of a crime. Is that correct?

**A:** Yes.

**Excerpt 5 — Webster's Dictionary; "In Charge Of" Theory (Lines 3142–3175)**

**Q:** At timestamp 33, you say, quote, would you like me to read you a Webster dictionary, unquote, rather than answering Mr. Wilson's question about the legal definition of a crime. You offered to read him a dictionary definition, is that correct?

**A:** I believe so.

13

**Q:** You then pulled out your phone and read RCW 46.61.020 to Mr. Wilson, do you recall that?

**A:** Yes.

**Q:** So you are relying on the, quote, in-charge-of prong of RCW 46.61.020 to justify the arrest, correct?

**[Slaven]:** Object to form.

**A:** The operating or in charge of.

### Excerpt 6 — Told Wife Charge Was Failure to Identify After Plaintiff Had Identified (Lines 3496–3523)

**Q:** At timestamp 47, you call Mr. Wilson's wife. You tell her, quote, I don't know what your husband is, uh, ID charged, failing to identify, unquote. Do you recall that?

**A:** I don't recall.

**Q:** And at that point, Mr. Wilson had already identified himself to not only Schoenborn, but you on camera, correct?

**A:** I believe at that point you said your name. Yes.

**Q:** Yet you told his wife the charge was failure to identify, even though he had already identified himself. Is that accurate?

**A:** I don't recall, but that sounds like something I would say.

### Excerpt 7 — Disability Awareness — Interrogatory Contradiction (Lines 3526–3556)

**Q:** At timestamp 56, you state, quote, I understand you have an amputated leg, unquote, so you were aware of Mr. Wilson's disability, correct?

**A:** I became aware at some point, I don't know when.

*Wilson v. Schoenborn et al., No. 1:25-cv-03038-MKD — Exhibits A & B*

**Q:** In your interrogatory answers, answer 12B, you were asked about the, quote, precise moment you became aware that plaintiff was a person with a disability, unquote. Your answer was, quote, none. How do you reconcile that answer with your on-camera statement, quote, I understand you have an amputated leg, unquote?

**A:** Um, I don't remember... I don't know.

**Q:** Why did you answer none in your interrogatory if you knew that Mr. Wilson had a disability?

**A:** Maybe I didn't understand the question.

### Excerpt 8 — No Medical Personnel Summoned (Lines 4942–4960)

**Q:** So did you summon medical personnel to evaluate Mr. Wilson?

**A:** It was never requested, no.

**Q:** So when you say you bent over backwards, you didn't step it up to summon medical personnel to evaluate Mr. Wilson, did you?

**A:** No, I don't typically summon medical help on traffic stops or even when people are under arrest. If he asked for it, absolutely, I would send it.

**Q:** In your request for admission responses, you admitted that, quote, did not request or summon medical evaluation for plaintiff during the incident, unquote. Do you recall that admission?

**A:** No. But I just told you the same thing.

### Excerpt 9 — Phone Taken; Acknowledges Right to Record (Lines 5026–5035)

**A:** I... the phone was taken away from Mr. Wilson at some point in the contact.

**Q:** Are you aware that citizens have a First Amendment right to record police officers performing their duties in public?

*Wilson v. Schoenborn et al., No. 1:25-cv-03038-MKD — Exhibits A & B*

**A:** Yes, but that right is not, it's based off of time and place.

## Excerpt 10 — Conflated Probable Cause and Reasonable Suspicion (Lines 5254–5290)

**Q:** In answer 13B, you stated, quote, a lawful detention must be supported by probable cause that is based on reasonable suspicions. Do you stand by that answer?

**A:** Yeah, wouldn't that give context to the previous question you asked? I explained it more there. Yeah.

**Q:** Probable cause and reasonable suspicion are two different legal standards, correct?

**A:** Correct.

**Q:** A Terry stop requires reasonable suspicion, correct?

**A:** Correct.

**Q:** An arrest requires probable cause, correct?

**A:** Correct.

**Q:** Okay, so your interrogatory answer conflates these two standards. Do you understand the difference between them today?

**A:** I understand the difference.

## Excerpt 11 — No-Cite / Book Anyway / "Trying to Reason Through" (Lines 5344–5353)

**Q:** At timestamp 104, you state, quote, at this point, we won't cite. Yeah. And we won't cite for any of the violations, because under 10.31.100, we didn't see him drive the car. So, we just won't cite for any violations. But we're going to book on the failure to identify, unquote. Having made that statement, did you at any point consider that if you could not cite for the underlying violation, the failure to identify charge might also be deficient?

*Wilson v. Schoenborn et al., No. 1:25-cv-03038-MKD — Exhibits A & B*

**A:** Uh, no, because again, I'm trying to reason through that on the traffic stop. What is there? So that's me talking out loud, trying to work through that.

**Excerpt 12 — Prosecutor Said He Was Not Going to Charge It (Lines 5467–5476)**

**Q:** What was that conversation entail?

**A:** Um, it entailed, uh, him calling me and saying he was not gonna charge it. And that was the bulk of the conversation.

---

**END OF EXHIBITS A & B**

**CERTIFICATE OF AUTHENTICITY**

I, Cameron James Wilson, Plaintiff *Pro Se*, hereby certify that the foregoing deposition excerpts are true, accurate, and verbatim reproductions of the sworn testimony of Defendants David Schoenborn and Sergeant Nate Hovinghoff, as recorded during their respective depositions on June 16, 2026 and June 15, 2026, conducted via Zoom videoconference and transcribed by Notary Public Stefano Uriah Petruzziello.

Dated: June 29, 2026

/s/Cameron James Wilson
*Plaintiff, Pro Se — In Propria Persona*
1312 South 44th Street
Yakima, Washington 98908
(503) 496-9239