**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT YAKIMA**

CAMERON JAMES WILSON,

    *Plaintiff,*

v.

DAVID SCHOENBORN and
SERGEANT NATE HOVINGHOFF,

    *Defendants.*

Case No. 1:25-cv-03038-MKD

**PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY**

ORAL ARGUMENT REQUESTED

# I. INTRODUCTION

Pursuant to the Court's Order of July 20, 2026 (ECF No. 58), Plaintiff submits this Reply in Support of his Cross-Motion for Partial Summary Judgment. As directed, this Reply is strictly limited to matters raised in Defendants' Response (ECF No. 57).

Defendants' Response is a masterclass in *post hoc* rationalization. Each justification advanced was manufactured after the fact to salvage an encounter that was unlawful from its inception. A declined welfare check is retroactively relabeled a "traffic stop"; clear plate covers are retroactively characterized as "obstructing"; Trooper Schoenborn's sworn admission that he suspected "nothing" is retroactively recast as "legal precision"; his ignorance of the law is retroactively "verified" by Google searches conducted after the arrest; a failed "operating" theory is retroactively pivoted to "in charge of"; and physical force deployed against a known amputee is retroactively minimized as "de minimis." The Fourth Amendment does not permit officers to act first and justify later. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968).

Furthermore, Defendants' Response is remarkable for what it conspicuously refuses to address. Of the fourteen substantive legal arguments advanced in Plaintiff's Cross-Motion (ECF No. 49), Defendants' Response fails to address—or even acknowledge—seven of them in their entirety, and addresses only the surface of two others while ignoring the dispositive admissions that destroy their positions. Under the well-established principle that arguments not addressed in opposition are deemed conceded, *see Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008), Defendants have effectively conceded Plaintiff's entitlement to partial summary judgment on liability.

*Nemo auditur propriam turpitudinem allegans*—no one is heard who alleges his own turpitude. Defendants cannot simultaneously rely upon their client's declarations while ignoring the same client's sworn deposition testimony that destroys those declarations. This Reply demonstrates that Defendants' Response is both substantively meritless and procedurally deficient, and that Plaintiff's Cross-Motion must be granted.

WILSON v. SCHOENBORN, ET AL.                                      NO. 1:25-cv-03038-MKD

## II. DEFENDANTS' EVIDENTIARY ATTACK FAILS AS A MATTER OF LAW

Defendants devote the first several pages of their Response (ECF No. 57, pp. 2–4) to an evidentiary attack on Plaintiff's deposition excerpts (ECF No. 50), arguing that the video depositions lack proper certification. This argument fails for multiple independent reasons.

*First*, on July 7, 2026, Defendants filed Notary Certificates (ECF No. 53) authenticating the very depositions they now seek to exclude. Defense counsel Brandon Slaven personally filed these certificates, which constitute judicial admissions that the depositions are authentic records of sworn testimony. A party cannot file authentication certificates and then argue the authenticated documents are inadmissible. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

*Second*, Federal Rule of Evidence 901(b)(1) provides that testimony of a witness with knowledge that an item is what it is claimed to be is sufficient for authentication. Plaintiff's certificate attesting that the video excerpts are accurate reproductions of the depositions satisfies this standard. Moreover, Fed. R. Evid. 901(b)(9) provides for authentication of "[e]vidence describing a process or system and showing that it produces an accurate result." Video recordings of depositions conducted by certified court reporters, noticed under the Federal Rules, and attended by opposing counsel are inherently reliable. *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 561 (D. Md. 2007).

*Third*, Defendants' counsel attended both depositions on June 15 and 16, 2026, participated fully, cross-examined Plaintiff, and raised no objection to the recording method. Having participated without objection, Defendants have waived any challenge to the form or authenticity of the deposition record. *See Fed. R. Civ. P. 32(d)(3)(B)*; *Kirschner v. Broadhead*, 671 F.2d 1034, 1038 (7th Cir. 1982).

*Fourth*, and most critically, Defendants do not dispute the *substance* of the deposition testimony. They do not argue that Schoenborn did not say "Nothing" when asked what crime he suspected. They do not argue that Schoenborn did not admit he used "Google AI" after the arrest. They do not argue that Hovinghoff did not tell Schoenborn they could not cite under RCW 10.31.100. Their attack is purely procedural—a transparent attempt to prevent this Court from confronting testimony that destroys their case. Where the substance of testimony is undisputed and the only challenge is to the form of submission, courts routinely consider the evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). Furthermore, Defendants' own Reply (ECF No. 52, p. 3) conceded that the deposition content is "consistent with prior testimony"—an admission that the substance is accurate regardless of the form of submission.

## III. DEFENDANTS' FAILURE TO ADDRESS PLAINTIFF'S ARGUMENTS CONSTITUTES CONCESSION

Under Ninth Circuit law, "[i]f a party fails to counter an argument that the opposing party makes. . . the court may treat that argument as conceded." *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008). This principle applies with particular force at the summary judgment stage, where the non-moving party bears the burden of demonstrating a genuine dispute of material fact. *See Celotex*, 477 U.S.

2

WILSON v. SCHOENBORN, ET AL.                                    NO. 1:25-cv-03038-MKD

at 324.

Defendants' Response (ECF No. 57) fails to address the following arguments from Plaintiff's Cross-Motion:

1. **The Sham Affidavit Doctrine** (ECF 49, pp. 3–4): Plaintiff demonstrated that Defendants' declarations (ECF Nos. 25, 26) are "flatly contradicted" by their subsequent deposition testimony and entitled to no weight under *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). **Defendants' Response: Silence.**

2. **The Welfare Check Admission** (ECF 49, pp. 4–5): Trooper Schoenborn admitted under oath that the initial contact was a "community caretaking" welfare check—not a traffic investigation. (Schoenborn Depo. 47:24–48:14). **Defendants' Response: Silence.** Instead, they assert—without citation to the deposition record—that a "traffic stop" occurred.

3. **The "Nothing" Admission** (ECF 49, pp. 5–6): When asked what crime he suspected Plaintiff of committing, Schoenborn replied: "**Nothing**." (Schoenborn Depo. 48:20–21). This single admission is dispositive under *Brown v. Texas*, 443 U.S. 47, 52 (1979). **Defendants' Response: Complete silence.** The most damaging admission in the entire case receives no response whatsoever.

4. **The Complete Deposition Syllogism** (ECF 49, pp. 6–7): Schoenborn admitted, step by step, that (a) he never observed Plaintiff driving; (b) a person outside a parked vehicle is not operating it; (c) if the statute did not apply, Plaintiff had no duty to identify; (d) if no duty existed, refusal to identify was not a crime; and (e) arresting someone for a crime that does not exist is not a lawful arrest. **Defendants' Response: Complete silence.**

5. **The Google AI Admission Defeating *Devenpeck*** (ECF 49, pp. 7–8): Schoenborn admitted he consulted "Google AI" *after* the arrest to search for a statutory justification, which defeats any *Devenpeck* argument because probable cause must be based on facts "known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). **Defendants' Response: They invoke *Devenpeck* without addressing the Google AI admission.**

6. **The Oregon Plate Exemption** (ECF 49, p. 9): The vehicle bore Oregon plates, and under RCW 46.16A.160, vehicles registered in other states are exempt from Washington display requirements. No plate cover "infraction" existed as a matter of law. **Defendants' Response: Complete silence.**

7. **The Phone Seizure as Independent Fourth Amendment Violation** (ECF 49, p. 9): The seizure of Plaintiff's recording device constitutes an independent constitutional violation under *Riley v. California*, 573 U.S. 373 (2014). **Defendants' Response: Complete silence.**

8. **The Fourteenth Amendment Substantive Due Process Claim** (ECF 49, pp. 13–14): The totality of Defendants' conduct "shocks the conscience" under *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). **Defendants' Response: Complete silence.**

WILSON v. SCHOENBORN, ET AL.                                                    NO. 1:25-cv-03038-MKD

9. **Hovinghoff's Seven Specific Admissions** (ECF 49, pp. 15–16): Seven separate deposition admissions establishing Hovinghoff's knowledge, ratification, and failure to intervene. **Defendants' Response: They assert Hovinghoff "arrived after detention" without addressing any of the seven specific admissions.**

This Court should deem each of these arguments conceded and enter partial summary judgment in Plaintiff's favor on the corresponding claims.

## IV. DEFENDANTS' AFFIRMATIVE ARGUMENTS ARE MERITLESS

To the extent Defendants' Response advances affirmative arguments, each fails on its own terms.

### A. The "Traffic Stop" Theory Is Contradicted by Defendants' Own Testimony

Defendants assert in their Response that "a traffic stop occurred" and that "Schoenborn was investigating whether Wilson committed a traffic infraction." (ECF No. 57, pp. 5–6). This assertion is irreconcilable with Schoenborn's own sworn deposition testimony:

> **Q:** "What was the nature of your initial contact with Mr. Wilson?"
> **A:** "Community caretaking." (Schoenborn Depo. 47:24–48:14).

> **Q:** "What crime did you suspect Mr. Wilson of committing at the time you escalated the encounter?"
> **A:** "**Nothing.**" (Schoenborn Depo. 48:20–21).

Under the summary judgment standard, this Court must view all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But here, the non-moving party's version of the facts is corroborated by the *moving party's own sworn testimony*. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) ("[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment"). Defendants cannot maintain a "traffic stop" theory when their own client testified under oath that the encounter was a welfare check and that he suspected "nothing." The sham affidavit doctrine, *Kennedy*, 952 F.2d at 266, precludes reliance on prior declarations that are "flatly contradicted" by subsequent deposition testimony. Defendants' declarations (ECF Nos. 25, 26) asserting a traffic investigation are entitled to no weight.

### B. The "In Charge Of" Theory Fails for Four Independent Reasons

Defendants argue in their Response (ECF No. 57, pp. 5–6) that even without observed driving, Plaintiff was "in charge of" the vehicle under RCW 46.61.020 because he "exited the driver's seat upon Schoenborn initiating the stop," thereby triggering a duty to identify. This theory fails for four reasons that Defendants' Response does not address:

*First*, Sergeant Hovinghoff admitted he could not define what constitutes being "in charge of" a vehicle. (Hovinghoff Depo. 94:3–5). An officer who cannot articulate the elements of the offense he purports to enforce cannot possess probable cause to arrest for that offense. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *see also United States v. Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2000).

4

WILSON v. SCHOENBORN, ET AL.                                                                    NO. 1:25-cv-03038-MKD

*Second*, Schoenborn admitted Plaintiff was standing *outside* the vehicle at first contact. (Schoenborn Depo. 29:16–19). He further admitted that "a person standing outside a parked vehicle with the engine off is not operating that vehicle." (Schoenborn Depo. 29:20–24). Under *State v. Smelter*, 36 Wash. App. 439 (1984), "in charge of" requires present directing influence over the vehicle—a person standing outside a parked vehicle with the engine off does not exercise such influence.

*Third*, RCW 46.61.020 requires that the identification demand occur during a "lawful stop." Because no lawful stop existed—Schoenborn admitted he suspected "nothing"—the statutory predicate was never triggered. The statute's identification requirement is not self-executing; it is triggered solely by a lawful detention. *See United States v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019). A citizen has no legal duty to comply with an unlawful command, and a refusal to comply with an unlawful command cannot constitute the criminal act necessary for probable cause. *See Florida v. Royer*, 460 U.S. 491, 497–98 (1983).

*Fourth*, Defendants' reliance on the "driver's seat" observation is defeated by the undisputed temporal sequence. Defendants' own filing (ECF 57) states that Wilson "exited the driver's seat upon Schoenborn initiating the stop." This admission confirms that by the time any encounter occurred, Plaintiff was *outside* the vehicle. A person who has already exited a vehicle before any officer contact is not "in charge of" that vehicle at the time of the demand. The statute uses the present-tense "while"—requiring contemporaneous operation or control at the time of the officer's demand. RCW 46.61.020 ("Every person *while* operating or in charge of any vehicle…") (emphasis added). *See State v. J.P.*, 149 Wash.2d 444 (2003) (penal statutes strictly construed; courts cannot add words the legislature omitted).

## C. *Zorn v. Linton* **Is Inapposite and Must Be Distinguished**

Defendants' Response (ECF No. 57, p. 5) introduces *Zorn v. Linton*, 146 S. Ct. 926 (2026), which they cite for the proposition that qualified immunity requires a plaintiff to identify a case with materially similar facts. This case is readily distinguished. *Zorn* involved an officer who made a split-second use-of-force decision during a *lawful arrest* supported by probable cause. The Supreme Court held that the specific *manner* of force was not clearly established as unconstitutional because no prior case had addressed materially similar circumstances. *Id.* at 930.

The present case is fundamentally different in three respects: *First*, *Zorn* involved a *lawful arrest*—the underlying probable cause was not disputed. Here, the arrest itself was *unlawful*—as Schoenborn admitted step by step under oath. The qualified immunity analysis for an unlawful arrest is categorically different from the analysis for the manner of force during a lawful arrest. *Second*, the right at issue here—the right to be free from arrest without probable cause—has been clearly established since the founding of the Republic and specifically since *Brown v. Texas* in 1979. Unlike the novel force question in *Zorn*, there is nothing novel about the proposition that an officer cannot arrest a citizen when the officer admits he suspects "nothing." *Third*, *Zorn* does not overrule or modify the *Malley v. Briggs* principle that qualified immunity does not protect "those who knowingly violate the law." 475 U.S. 335, 341 (1986). Schoenborn's admissions—that he suspected nothing, knew he lacked statutory authority, admitted the refusal to identify was not a crime, and consulted Google AI post-arrest to find a justification—place him squarely in the *Malley* category of knowing violators. *Zorn*'s "clearly established" analysis is irrelevant where the officer *admits* he knew the arrest was unlawful.

The Ninth Circuit has held that where an officer's conduct is "patently unconstitutional," a

5

plaintiff need not identify a case with identical facts. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Arresting a citizen based on "nothing" and then consulting an AI chatbot to reverse-engineer a justification is patently unconstitutional. No closely analogous precedent is required because "the unlawfulness [is] apparent." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

**D. The Probable Cause Theory Is Destroyed by Defendants' Own Admissions**

Defendants argue in their Response (ECF No. 57, pp. 6–7) that probable cause existed to arrest Plaintiff for failure to identify under RCW 46.61.021(3) and RCW 46.61.022. This argument requires the Court to ignore: (1) Schoenborn's admission that he suspected "Nothing" (Schoenborn Depo. 48:20–21); (2) Schoenborn's admission that the encounter was a "community caretaking" welfare check, not a traffic investigation (Schoenborn Depo. 47:24–48:14); (3) Both Defendants' admission that they never observed Plaintiff driving (Schoenborn Depo. 47:5–8; Hovinghoff Depo. 94:7–9); (4) Hovinghoff's admission that they could not cite under RCW 10.31.100 because they did not see Plaintiff drive (Hovinghoff Depo. 93:25–94:1); (5) Schoenborn's admission that during the welfare check, Plaintiff was free to decline questions and walk away (Schoenborn Depo. 53:15–21); (6) Schoenborn's admission that he suspected no crimes at that time (Schoenborn Depo. 49:11–16); (7) Schoenborn's admission that if there is no crime and an arrest was made, "that would be improper" (Schoenborn Depo. 102:15–19); and (8) Schoenborn's admission that he consulted "Google AI" *after* the arrest to search for statutory justification (Schoenborn Depo. 103:10–17).

Schoenborn's Google search is the death knell for Defendants' probable cause argument. *Devenpeck* requires that probable cause exist based on facts known to the officer *at the time of the arrest*. 543 U.S. at 152. An officer who must Google the law after the fact did not know the law at the time. An officer who did not know the law at the time did not possess probable cause at the time. This is not "verification"—this is discovery. The distinction is fatal. No reasonable juror could find probable cause existed in the face of these admissions. Summary judgment in Plaintiff's favor on the false arrest claim is compelled as a matter of law.

**E. Defendants' Nonresident Exemption Argument Is Legally Incorrect**

Defendants argue in their Response (ECF No. 57) that even if Plaintiff is an Oregon resident, "no safe harbor was available" under RCW 46.16A.160 because the plate cover allegedly obscured the registration tab. This argument fundamentally misstates the law. RCW 46.16A.160 provides an unqualified exemption from Washington's registration and display requirements for nonresident vehicles "currently and properly registered and licensed under the laws of the state or country of which the owner is a resident." The statute imposes precisely *one* condition: valid registration in the home jurisdiction. It does not contain—nor has any Washington court ever read into it— an additional requirement that the out-of-state registration be *visually apparent* to a Washington officer. Defendants' argument would require this Court to judicially engraft a condition the Legislature deliberately omitted. *See Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wash.2d 1, 11 (2002).

Moreover, Defendants conflate the nonresident exemption (RCW 46.16A.160) with Washington's plate-display regulations (RCW 46.16A.200). These are separate statutory provisions. Even assuming, *arguendo*, that a plate cover violated RCW 46.16A.200(7)(b), such a violation would not

nullify the nonresident exemption. A nonresident's vehicle does not retroactively become subject to Washington's registration requirements merely because an officer cannot immediately discern a sticker. Finally, Defendants' assertion that the vehicle was "eventually determined" to not be properly registered is a fatal temporal concession. Information discovered *after* a seizure cannot retroactively justify the seizure. *Terry*, 392 U.S. at 21–22.

## F. The Excessive Force Defense Ignores the Undisputed Record

Defendants argue in their Response (ECF No. 57, pp. 7–8) that the force used was "de minimis" and cite their own expert (ECF No. 34-1). This argument fails because: *First*, the force and property seizure are integral elements of the unlawful arrest claim. When an arrest is unlawful *ab initio*, any force used to effectuate it is constitutionally unreasonable. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 472–73 (9th Cir. 2007). *Second*, under *Graham v. Connor*, 490 U.S. 386, 396 (1989), the severity of the crime is the threshold factor. Here, the "crime" was nothing—as Schoenborn admitted. Where no crime is suspected, the governmental interest in the use of *any* force is at its nadir. *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002). *Third*, Schoenborn admitted that his characterization of Plaintiff as "combative" was a "slip of the tongue" and that no fighting occurred. (Schoenborn Depo. 46:4–12). The fabrication of a false "combative" narrative—broadcast over police radio—is itself evidence of unreasonable force and retaliatory animus. *Fourth*, Plaintiff is a known amputee. Both Defendants admitted they knew of Plaintiff's disability *before* applying physical restraints. (Schoenborn Depo. 65:7–8; Hovinghoff Depo. 94:13–14). Using physical force to take a passively non-compliant individual known to have one leg—during an unlawful arrest for which no probable cause existed—without requesting medical personnel or attempting any accommodation, is objectively unreasonable under the totality of the circumstances. *Bryan v. MacPherson*, 630 F.3d 805, 829 (9th Cir. 2010). *Fifth*, Defendants' reliance on their own expert is unavailing at summary judgment. Expert opinion cannot create a genuine dispute where the underlying facts are undisputed and compel a legal conclusion. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 543 (6th Cir. 1999). The undisputed facts—no crime suspected, no threat posed, no active resistance, known disability—compel the conclusion that the force was unreasonable as a matter of law.

## G. The First Amendment Claim Survives Because No Probable Cause Existed

Defendants' Response (ECF No. 57, p. 7) invokes *Nieves v. Bartlett*, 587 U.S. 391 (2019), arguing that probable cause bars Plaintiff's First Amendment retaliation claim. But *Nieves* applies only where probable cause *exists*. *Id.* at 401 ("the presence of probable cause" generally defeats a retaliatory arrest claim) (emphasis added). As demonstrated above, no probable cause existed—Schoenborn admitted it. The *Nieves* bar is therefore inapplicable. With the *Nieves* bar removed, Plaintiff's five-factor retaliatory animus showing (ECF 49, pp. 12–13) stands unrebutted: (1) Schoenborn snapped his fingers at Plaintiff while Plaintiff exercised his rights (Schoenborn Depo. 45:15–16); (2) Schoenborn approached Plaintiff—escalation, not de-escalation (Schoenborn Depo. 45:13–14); (3) Schoenborn fabricated a "combative" narrative—then admitted it was a "slip of the tongue" (Schoenborn Depo. 46:4–12); (4) Schoenborn labeled Plaintiff a "sovereign citizen" to his supervisor, and Hovinghoff admitted this label affected his assessment (Hovinghoff Depo. 24:8–25); and (5) Schoenborn seized the phone Plaintiff was using to record the encounter

WILSON v. SCHOENBORN, ET AL.                                          NO. 1:25-cv-03038-MKD

(Hovinghoff Depo. 88:11–15). The seizure of Plaintiff's phone while he was actively recording the encounter directly implicates the clearly established First Amendment right to record police activity. *See Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995). The temporal proximity between Plaintiff's exercise of First Amendment rights and the escalation to arrest establishes retaliatory animus as a matter of law. *Nieves*, 587 U.S. at 402.

### H. Hovinghoff's Liability Is Established by His Own Admissions

Defendants argue in their Response (ECF No. 57, pp. 9–10) that Hovinghoff "arrived on scene after [Wilson] was detained" and therefore bears no liability. This argument fails because: *First*, Hovinghoff arrived during an *ongoing* unlawful detention—not after it concluded. He assessed the situation, communicated with Schoenborn, and *ratified* the continued detention. A supervisor who ratifies an ongoing constitutional violation is liable under § 1983. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). *Second*, Hovinghoff admitted he told Schoenborn they could not cite under RCW 10.31.100—yet did not direct Plaintiff's release. (Hovinghoff Depo. 93:25–94:1). A supervisor who *knows* the arrest lacks legal authority and fails to intervene has violated his duty to intercede. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). *Third*, Hovinghoff admitted he was "trying to reason through" whether the failure-to-identify charge was valid—an admission that he was *unsure* of the legal basis for the arrest at the time he ratified it. (Hovinghoff Depo. 94:3–5). An officer who is unsure whether an arrest is lawful and proceeds anyway acts with deliberate indifference to constitutional rights. *Fourth*, Hovinghoff admitted the prosecutor refused to file charges—yet he did not direct Plaintiff's immediate release. (Hovinghoff Depo. 96:9). This is direct evidence of ratification. *Fifth*, Hovinghoff admitted he believes "state statutes can override the Constitution." (Hovinghoff Depo. 24:8–25). A supervisor who holds this belief and acts upon it has demonstrated the deliberate indifference to constitutional rights that § 1983 was enacted to remedy.

## V. THE ADA CLAIM SURVIVES SUMMARY JUDGMENT

Defendants argue in their Response (ECF No. 57, p. 8) that Title II of the ADA does not apply to individually named defendants and that no facts suggest an ADA violation. Both arguments fail. *First*, while Title II's applicability to individual defendants is a contested legal question, the Ninth Circuit has held that Title II applies to police encounters involving individuals with known disabilities. *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014). To the extent individual liability is unavailable under Title II, Plaintiff's ADA claim sounds against the State of Washington as the public entity whose agents committed the violation. *See Tennessee v. Lane*, 541 U.S. 509, 531–32 (2004). *Second*, the undisputed facts establish deliberate indifference: (1) Both Defendants knew Plaintiff was an amputee *before* applying physical restraints (Schoenborn Depo. 65:7–8; Hovinghoff Depo. 94:13–14); (2) No medical personnel were summoned; (3) No reasonable accommodation was provided during arrest, handcuffing, or transport; (4) Schoenborn received no ADA training whatsoever (Schoenborn Depo. 11:20–12:1); and (5) Hovinghoff's interrogatory response stated "None" when asked when he became aware of Plaintiff's disability—contradicting his on-camera statement "I understand you have an amputated leg" (Hovinghoff Depo. 61:24–26; 62:1–14). This constitutes deliberate indifference under *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001).

8

WILSON v. SCHOENBORN, ET AL.                                                    NO. 1:25-cv-03038-MKD

# VI. CONCLUSION

The evidentiary record in this case is extraordinary in its clarity. Defendants' own clients have admitted, under oath and step by step, that: The encounter was a welfare check, not a traffic investigation; Schoenborn suspected "nothing" at the time he escalated the encounter; Neither Defendant observed Plaintiff driving; Both Defendants knew they lacked statutory authority to cite under RCW 10.31.100; If the statute did not apply, Plaintiff had no duty to identify; If no duty existed, the refusal to identify was not a crime; Arresting someone for a crime that does not exist is not a lawful arrest; Schoenborn consulted "Google AI" *after* the arrest to search for justification; Schoenborn fabricated a "combative" narrative that he later admitted was a "slip of the tongue"; Both Defendants knew Plaintiff was an amputee before applying force; and Hovinghoff knew the arrest lacked legal authority yet failed to intervene.

Defendants' Response to Plaintiff's Cross-Motion fails to address the vast majority of these admissions and the legal arguments built upon them. Under the principle that unaddressed arguments are deemed conceded, *Shakur*, 514 F.3d at 892, Plaintiff's entitlement to partial summary judgment on liability is established beyond genuine dispute. *Nemo est supra leges*—no one is above the law. The Creator-endowed rights of the individual—the right to be free from unreasonable seizure, the right to be free from arrest without probable cause, the right to speak freely and record the actions of public servants, the right to be treated with dignity regardless of disability—these rights are not granted by government and cannot be extinguished by government actors who admit they acted without lawful authority.

For the foregoing reasons, Plaintiff respectfully requests that this Court: **GRANT** Plaintiff's Cross-Motion for Partial Summary Judgment on the issue of liability (ECF No. 49); **STRIKE** Defendants' affirmative defense of qualified immunity as defeated by Defendants' own admissions; **DEEM CONCEDED** all arguments raised in ECF No. 49 that Defendants failed to address in their Response (ECF No. 57); and **SET** this matter for trial solely on the quantum of damages.

DATED this 31st day of July, 2026.


/s/ CAMERON JAMES WILSON
*Plaintiff, Pro Se—In Propria Persona*
1312 South 44th Street
Yakima, Washington 98908
(503) 496-9239 — cam@piitp.com

WILSON v. SCHOENBORN, ET AL.                                          NO. 1:25-cv-03038-MKD

# CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I caused a true and correct copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY**, together with all supporting documents, to be served upon all counsel of record via the Court's CM/ECF electronic filing system, which will send notification of such filing to:

Brandon E. Slaven
Assistant Attorney General
Torts Division
Office of the Attorney General
P.O. Box 40126
Olympia, WA 98504-0126
Brandon.Slaven@atg.wa.gov


DATED this 31st day of July, 2026.


/s/ CAMERON JAMES WILSON
*Plaintiff, Pro Se*